**Larry A. DOLLIVER, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 30S00–9012–CR–823.**

Supreme Court of Indiana.

Sept. 9, 1992.

**526**

John L. Davis, Karin L. Hull, Pritzke & Davis, Greenfield, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Larry A. Dolliver (Appellant–Defendant) seeks reversal of his convictions for possession of cocaine with intent to deliver, possession of marijuana with intent to deliver, maintaining a common nuisance, and possession of a schedule IV controlled substance with intent to deliver. A jury found him guilty of all four counts and also determined that he was an habitual offender. The trial court sentenced him to concurrent sentences totalling 80 years.

Dolliver presents two issues for our review which we restate as follows:

(1) Whether the trial court erred by failing to grant Dolliver's requests for suppression of evidence, and

(2) Whether the 80–year sentence is manifestly unreasonable.

Because we hold that the trial court erred in failing to grant Dolliver's motions to suppress and that, therefore, Dolliver is entitled to a new trial, we do not need to determine whether or not the sentence imposed was manifestly unreasonable.

*Facts*

The pertinent facts in the case are that at approximately 9:00 a.m. on January 2, 1990, the State Police Post in Pendleton, Indiana, received an anonymous phone call. Detective Ken Houck took the call. Houck did not recognize the caller's voice and the caller did not identify himself, but proceeded to tell Houck that a man by the name of Larry Dolliver was selling cocaine. The unidentified caller gave Houck the approximate location of the trailer in which Dolliver lived and described Dolliver as being approximately 40 years old with brown hair and weighing approximately 175 pounds. The caller also told Houck that Dolliver had been in prison at the Pendleton Reformatory on two prior occasions. The caller then told Houck that the caller's sister was involved in this matter and that Dolliver was "f___ing up" a lot of people's lives. He further told Houck that Dolliver was selling from his trailer, and that he travelled around in a Cadillac, and also drove a four-wheel drive truck. Additionally, the caller told Houck that the caller's ex-girl friend was into drugs "kind of heavy" and that the caller had found out that it was the same "m___r-f___ing guy" who had gotten his girl friend in trouble and caused the two of them to break up. The caller also told Houck that Dolliver didn't work, but merely sold drugs. Finally, the caller stated that his sister had been at the trailer the night before and that Dolliver had a lot of drugs in his trailer. No identification of the sister or information establishing her as a credible or reliable informant was asked for or given. The caller never stated that he had personally been in the residence of Dolliver or that he personally had seen Dolliver either using or selling drugs and, finally, the caller continued to refuse to identify himself in any manner.

Following the telephone conversation, Houck investigated Dolliver by running a driver's license search, which revealed Dolliver's address, social security number and date of birth. He also confirmed that Dolliver had, in fact, been convicted of a felony

and that other officers who were generally familiar with Dolliver considered him to be a professional criminal. No surveillance of the trailer was conducted and no information was obtained indicating any unusual amount of traffic to or from the trailer which would tend to confirm that drug sales were being transacted from Dolliver's residence.

Following this one or two-day investigation, Houck contacted the Hancock County Prosecutor's office and was given a request for search warrant form to fill out. He prepared the form and presented it to the Hancock County Court. A search warrant was issued and was executed on January 4, 1990.

When Houck and other state troopers served the warrant, Dolliver was not at home, but his sister was present and, after being presented with the warrant, permitted the officers to search the trailer. Marijuana and cocaine, as well as lockbox keys, were found in the trailer during the search. While the search was taking place, Dolliver returned and started to pull into his driveway, but upon seeing the officers immediately backed out and left. He was followed by Trooper Whitaker who initially lost sight of the vehicle, but eventually stopped a vehicle he believed to be the one he had seen at the residence. Whitaker arrested Larry Dolliver based on the presence of illegal drugs found in the Dolliver trailer during the search. Dolliver's car was towed to the State Police Post at Pendleton, Indiana, and five to six hours later a warrantless search of the car was conducted, during which additional drugs were found in the car. Cocaine was also found in Dolliver's pockets during the booking process at the Hancock County Jail. After the booking, Dolliver was advised of his *Miranda* rights prior to questioning, and he requested a lawyer; but, nevertheless, Houck continued the interrogation and received a statement from Dolliver. This statement was subsequently suppressed as being in violation of Dolliver's rights under the Sixth Amendment to the United States Constitution and was not admitted into evidence. During the trial, however, the drugs discovered at the residence, as well

as the drugs discovered in the car and on Dolliver's person, were admitted into evidence over Dolliver's objections and after the court had denied Dolliver's motions to suppress such evidence.

The motions to suppress were premised on the fact that a recording of the anonymous telephone call to Houck had been made and, at Dolliver's request, transcribed. Dolliver's contention, both in the motions to suppress and in this appeal, is that the tape recording dramatically clashes with the facts alleged in the affidavit prepared by Trooper Houck to request a search warrant. In turn, Dolliver argues that the search conducted pursuant to this warrant was in violation of the Fourth Amendment to the United States Constitution and Article 1 Section 11 of the Indiana Constitution. Because of this violation of his constitutional rights, Dolliver contends that the evidence of the trailer search as well as the auto search and personal search should be suppressed. We agree.

### Invalidity of the Search Warrant

In *Callender v. State* (1922), 193 Ind. 91, 138 N.E. 817, this Court held that evidence gained as a result of a constitutionally invalid search and seizure of property would not be admissible in a subsequent prosecution. This decision predated by approximately 40 years the United States Supreme Court opinion of *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, which required the states to exclude evidence obtained in violation of the Fourth Amendment to the United States Constitution. These two cases have been consistently followed by this Court to suppress evidence gained as a result of an unconstitutional search and seizure. We most recently recognized this principle in *Benefiel v. State* (1991), Ind., 578 N.E.2d 338, *cert. den.* (1992), —— U.S. ——, 112 S.Ct. 2971, 119 L.Ed.2d 591, and *Everroad v. State* (1992), Ind., 590 N.E.2d 567.

In *Benefiel v. State,* we recognized the above-cited principle as well as an exception to that principle in a situation where the search is conducted under emergency circumstances involving injury or imminent

danger to a person's life. However, in *Benefiel* we reiterated the general rule of law that if the affidavits presented to the trial judge requesting a search warrant contained "second-hand hearsay information", it would be insufficient as far as search for property was concerned. 578 N.E.2d at 344. Most recently, in *Everroad v. State,* we discussed the effect of an affidavit for probable cause based on hearsay and held that a search warrant could be based on hearsay only if the affidavit contained either "reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished" or "information that establishes that the totality of the circumstances corroborates the hearsay." 590 N.E.2d at 570, *quoting Ind. Code* § 35-33-5-2(a–b). In *Everroad,* we held that neither of the above requirements was met and concluded that "the hearsay mountain is insurmountable, and does not constitute probable cause." 590 N.E.2d at 571. We must reach the same conclusion here.

■ A comparison of the recorded anonymous telephone call with the affidavit prepared by Houck reveals extreme discrepancies. In the search warrant affidavit, after describing the location to be searched, Houck swears "there is probable cause to believe that certain property is concealed in [such location] which constitutes unlawfully obtained property, contraband, evidence of a crime or other illegal property." We hold that the information received by Houck from the anonymous call, combined with the information gathered by Houck as a result of his investigation, could not amount to probable cause to believe the above statement. The caller did not identify himself and did not establish his personal knowledge of any of the claims that he made concerning Dolliver's possession of narcotics. Based on the information available to Houck, it was equally conceivable that Dolliver was a drug dealer or that the caller was angry at Dolliver for the perceived effect that Dolliver may have had on the caller's sister and ex-girl friend. The fact that Dolliver lived in a trailer,

drove a Cadillac and a four-wheel drive vehicle, and had been previously convicted of a crime clearly did not constitute probable cause to believe that the anonymous caller was telling the truth. Perhaps more investigation by the state police officer, such as placing Dolliver's residence under surveillance, may have eventually resulted in probable cause to believe that narcotics were contained in the trailer; but, simply stated, the evidence that Trooper Houck had available to him at the time he prepared the affidavit did not constitute probable cause.

There are other discrepancies between the recorded telephone call and the search warrant affidavit. The affidavit states that the affiant had received information from "a reliable and confidential informant which facts the informant stated were within his personal knowledge." The recorded anonymous call simply does not comport with this allegation. The anonymous phone caller was by no stretch of the imagination a reliable informant. The transcript reveals that, contrary to the affidavit, the caller did not state that he was at Dolliver's residence and did not state that he personally observed 40 pounds of marijuana and a kilo of cocaine as alleged in the affidavit.

■ Clearly, when the facts in an affidavit requesting a search warrant are at such variance with the truth as revealed by the transcribed anonymous telephone call, a warrant issued pursuant to such affidavit is invalid. Equally obvious is that a search and seizure conducted pursuant to such invalid warrant violates the citizen's rights to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution and Article 1 Section 11 of the Indiana Constitution. Here the affidavit stated that the confidential informant was "reliable" when, in fact, there was no basis to conclude that the anonymous caller was reliable. Also, the affidavit swears that this reliable, confidential informant made personal observations of large amounts of drugs when, in fact, the anonymous caller made no such representation. Dolliver's

constitutional rights were violated when the search warrant was issued pursuant to this misleading and unsubstantiated affidavit.

### Effects of Illegal Search

The State urges that we recognize and apply the "good faith" exception carved out by the United States Supreme Court in *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, *reh'g. den.* 468 U.S. 1250, 105 S.Ct. 52, 82 L.Ed.2d 942. The State reasons that conceding the warrant to have been invalidly issued, the officers who executed it were acting in good faith. Therefore, the State contends that the evidence obtained should not be suppressed. We disagree.

■ In *Blalock v. State* (1985), 483 N.E.2d 439, this Court, in *dicta*, recognized the good faith exception to the exclusionary rule articulated in *Leon.* That good faith exception, however, cannot be so broadly construed as to obliterate the exclusionary rule. The *Leon* Court itself recognized the limited applicability of the "good faith" exception in holding that:

> Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth.

468 U.S. at 923, 104 S.Ct. at 3421. The State urges that the trial judge should be the sole determiner of whether or not Houck had acted in good faith in preparing the affidavit. Although we agree with this general proposition, we also must fulfill our role as an appellate tribunal and determine whether the record reveals such inconsistencies between the anonymous telephone call and the allegations of fact sworn to by Houck that, at best, reveal a reckless disregard of the truth in the preparation of the affidavit. The facts contained in this record force us to conclude that the search warrant in this case was obtained as a result of an affidavit that Houck either knew was false or would have known was false but for a reckless disregard for the truth.

During the suppression hearing, Houck testified that he was unaware that the telephone conversation was being taped, and that he made "mistakes". Houck's testimony may very well have been truthful, but his lack of *mens rea* in preparing the affidavit cannot change the fact that the affidavit so flagrantly misrepresented the nature of Houck's knowledge so as to render the judge's issuance of a warrant based on such affidavit a nullity. Therefore, we must conclude that all evidence obtained as a result of the invalid warrant must be suppressed. This, logically, applies equally to the search of Dolliver's automobile and person because, as the State admits, neither would have occurred but for the discovery of drugs in Dolliver's trailer. Clearly, all of the evidence requested to be suppressed constitutes "fruit of the poisonous tree" and, therefore, should be excluded. *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

### Conclusion

We, therefore, hold that the trial court erred in denying Dolliver's motions to suppress and that such evidence should not have been admitted during the trial. This error requires that Dolliver's convictions be reversed. Consequently, Dolliver's convictions are reversed and this cause is remanded to the trial court for a new trial.

SHEPARD, C.J., and DeBRULER and DICKSON, JJ., concur.

GIVAN, J., dissents, with separate opinion.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion. The facts are: On January 2, 1990, Indiana State Police Detective Ken Houck received an anonymous telephone call stating that Larry Dolliver, appellant in this case, who lived near McCordsville, was dealing in drugs and described the vehicles he drove. The caller also stated that Dolliver had furnished the caller's girl friend with drugs and that she had ob-

served large quantities of drugs in his residence.

This information was recited in an affidavit made by Officer Houck to obtain a search warrant. The affidavit also contained a statement that the affiant believed the information of the informant to be accurate because his own personal knowledge was that:

"The description and location of the residence was exactly the way the residence appeared and was in the location he stated it was in. The post office confirmed that a Larry A. Dolliver lived at the trailer located at R.R. #1 Box 300[,] McCordsville. At the residence I observed the Cadillac and truck that the caller stated he had. Dolliver has know [sic] sign of employment. Caller stated he was approx. 40 years old and his D.O.B. is 5–16–50[,] 39 yrs. old. A criminal records check was made on Dolliver and it was learned that he had prior arrest[s] for safe burglary and three (3) for possession and dealing controlled substances. A check with the Indiana Parole Office showed he was on parole in 85 for possession of marijuana. A check with other local law enforcement showed Dolliver was a known drug dealer and all around criminal since he was in high school. Dolliver has been under investigation in the recent past for narcotics and attempted conspiracy to commit murder. It was also believed that he was also recently arrested in another state for transporting 200 pounds of marijuana in his vehicle. (This info. was not confirmed.) It has been my experience and the experience of others that persons with the criminal background like Dolliver[']s our [sic] good candidates and could very well be dealing controlled substances. Based on the following [sic] information and information provided by a concerned citizen I respectfully request a search warrant be issued for the residence of Larry Dolliver."

The search warrant was issued and officers found a large quantity of drugs and drug paraphernalia at appellant's residence. While officers were still at the residence carrying out the search, appellant drove into the driveway. However, he immediately backed out and proceeded down the street. Officers pursued him, arrested him, and impounded his vehicle. An inventory search of the vehicle was conducted and certain items removed therefrom.

Appellant claims the trial court erred by failing to grant his motions to suppress based on what he claimed to be the invalidity of the search warrant. He claims the search warrant was invalid because the affidavit made by Officer Houck to obtain the warrant contained false information. He points out the affidavit states that the officer's information came from "a reliable and confidential informant" when in fact the officer knew that he gained his information from an anonymous telephone call.

The affidavit is made on a form which Officer Houck obtained from the prosecutor's office. The statement that the information came from a reliable and confidential informant is part of the printed form. There is no question that Officer Houck should have been more careful in the use of the printed form and should have corrected the statement that his information came from a reliable and confidential informant. However, an examination of the affidavit in its entirety clearly discloses that the officer made no attempt to induce the judge to issue the warrant based upon the statements made by the informant. The latter part of the affidavit quoted above was based entirely upon the officer's investigation of appellant after having received the anonymous call.

In support of his position, appellant cites among his cases *Aguilar v. Texas* (1964) 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, *Spinelli v. United States* (1969), 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 and *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. The facts in *Gates* are remarkably similar to the facts in the case at bar. There, the police received an anonymous letter advising them of the drug activities of Gates and his wife. Based upon the anonymous letter, the police conducted an independent investigation which resulted in information which they

used to obtain a search warrant. They also appended the anonymous letter to their affidavit for the warrant.

The Illinois Circuit Court ordered the evidence gained by the search warrant suppressed on the ground that the affidavit submitted to the judge failed to support the necessary determination of probable cause. That decision was affirmed by the Illinois Appellate Court and by the Illinois Supreme Court. The State was granted *certiorari* to the Supreme Court of the United States and Justice Rehnquist, writing for the Court, discussed *Spinelli* and the misapplication of that case by many other jurisdictions. He stated:

"The rigorous inquiry into the *Spinelli* prongs and the complex superstructure of evidentiary and analytical rules that some have seen implicit in our *Spinelli* decision, cannot be reconciled with the fact that many warrants are—quite properly ...—issued on the basis of nontechnical, common-sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings." *Id.* at 235–36, 103 S.Ct. at 2331, 76 L.Ed.2d at 546.

Justice Rehnquist went on to say:

"Finally, the direction taken by decisions following *Spinelli* poorly serves '[t]he most basic function of any government': 'to provide for the security of the individual and of his property.' *Miranda v. Arizona* 384 U.S. 436, 539, 16 L.Ed.2d 694, 86 S.Ct. 1602, 1661 (1966) (White, J., dissenting). The strictures that inevitably accompany the 'two-pronged test' cannot avoid seriously impeding the task of law enforcement, see *e.g.*, n. 9, *supra*. If, as the Illinois Supreme Court apparently thought, that test must be rigorously applied in every case, anonymous tips would be of greatly diminished value in police work. Ordinary citizens, like ordinary witnesses, ... generally do not provide extensive recitations of the basis of their everyday observations. Likewise, as the Illinois Supreme Court observed in this case, the veracity of persons supplying anonymous tips is by hypothesis largely unknown, and unknowable. As a result, anonymous tips

seldom could survive a rigorous application of either of the *Spinelli* prongs. Yet, such tips, particularly when supplemented by independent police investigation, frequently contribute to the solution of otherwise 'perfect crimes.' " *Id.* at 237–38, 103 S.Ct. at 2331–32, 76 L.Ed.2d at 547–48.

The majority makes the same mistake made by the Illinois court in *Gates*. Notwithstanding the officer's error in stating that his information came from a reliable informant, it is obvious from the face of the affidavit that the officer in no way attempted to induce the issuing court by the information he had received in the telephone call. The thrust of his affidavit was obviously based upon his investigation of appellant following the receipt of the anonymous call. That information quoted above is ample to supply the trial judge with information sufficient for the issuance of the search warrant. The trial court did not err in admitting the evidence produced by the search warrant.

The majority holds that the trial court erred in failing to suppress the evidence found as a result of the search of his automobile. Appellant contends there was not sufficient probable cause for the police officers to pursue him after he had pulled into his driveway then backed out and was driving down the road. The police officers were in the process of a valid search of appellant's residence when he drove into his driveway, realized the officers were present, and immediately left; this was ample ground for the officers to pursue him to question him. *See Terry v. Ohio* (1968), 392 U.S. 1, 20–22, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889, 905–06; *Adams v. Williams* (1972), 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617; *Coates v. State* (1989), Ind., 534 N.E.2d 1087.

Inasmuch as considerable evidence of drug dealing had been discovered pursuant to the valid search of appellant's home, police officers had probable cause to arrest him. His arrest having been made on a public highway, it was necessary for the officers to impound appellant's vehicle not only for their purposes but for the preser-

vation of appellant's property. It is not only the right but the duty of the officers, under such circumstances, to conduct an inventory search of appellant's vehicle once it has been impounded. *See Foulks v. State* (1991), Ind., 582 N.E.2d 374; *Rabadi v. State* (1989), Ind., 541 N.E.2d 271. There was no error in the trial court's refusal to suppress the evidence based upon the search of appellant's automobile.

Appellant claims the trial court erred in imposing a manifestly unreasonable sentence. Appellant contends that since the trial court found a mitigating circumstance due to the significant substance abuse habit of appellant that it therefore erred in assessing the maximum penalty. All that is required of the trial court in passing sentence is that if more than a presumptive sentence is to be imposed, the court must consider the aggravating and mitigating circumstances and articulate the aggravating circumstances which support the increased sentence. *Fry v. State* (1988), Ind., 521 N.E.2d 1302.

In the case at bar, the trial court listed several aggravating circumstances including appellant's prior criminal history which alone would have sufficed to support the enhancement of the sentences. *See Duvall v. State* (1989), Ind., 540 N.E.2d 34 and *Guenther v. State* (1986), Ind., 501 N.E.2d 1071. I find no error in the sentence imposed by the trial court.

I would affirm the trial court.