Lashan L. **BRYANT**, Appellant–
Defendant Below,

v.

**STATE** of Indiana, Appellee.

No. 18A02–9407–CR–453.

Court of Appeals of Indiana.

Aug. 31, 1995.

---

Lon D. Bryan, Orlosky, Bryan and Bryan, Muncie, for appellant.

Pamela Carter, Attorney General, Suzann Weber Lupton, Deputy Attorney General, Office of Attorney General, Indianapolis, for appellee.

## OPINION

SULLIVAN, Judge.

Lashan L. Bryant (Bryant), following trial by jury, was convicted of possession of cocaine with intent to distribute, a class A felony.[1] He appeals, presenting the following five issues for our review:

1. Did the trial court err in failing to suppress evidence seized pursuant to a warrant authorizing the search of a motel room Bryant occupied?

---

1. I.C. 35–48–4–1 (Burns Code Ed Repl.1994).

2. Was evidence of Bryant's previous conviction of dealing in cocaine, which occurred five years before the present crime, improperly admitted due to its remoteness?

3. Did the trial court err in allowing a police officer to offer his opinion regarding the function and purpose of a pager found in Bryant's possession upon his arrest, and offered as circumstantial evidence at trial?

4. Were computerized phone logs and Bryant's motel registration card properly admitted into evidence pursuant to the business records exception to the hearsay rule, Ind.R.Evid. 802?

5. Did the prosecutor commit error when, in his closing argument, he repeatedly referred to Bryant as a "dope-dealer"?

Because we reverse upon grounds that the affidavit accompanying the search warrant was insufficient to constitute probable cause, it is not necessary that we address the remainder of Bryant's contentions.

The facts reflect that on November 21, 1993, the Drug Task Force Hotline received a phone call. The caller told the Muncie police officer manning the phone, Fred Simmons (Simmons), that she was "concerned" about a man named Lamont Brown who wished to date her daughter. Record at 171. Though the caller told Simmons that Brown had mentioned he was from Detroit, she apparently thought it odd that he was staying at the Comfort Inn in Muncie, and wanted the police to "look into it[.]" Record at 171. The caller did give Simmons her name, but asked that it be kept confidential.

After receiving the call, Simmons investigated by telephoning the Comfort Inn. He spoke with the assistant manager on duty, Cynthia Thomas (Thomas), who told him that no one by the name of Lamont Brown was registered, but that the hotel registry did show a Laron Smith. Thomas conveyed to Simmons her lack of surprise that the police were investigating Smith, volunteering the additional information that he had paid several days in advance by cash, that he re-

ceived approximately thirty phone calls a day, and that there were "a lot of people in and out" of his room. Record at 173. Thomas also faxed Smith's hotel registration to Simmons and gave the Ohio license plate number on the vehicle he was driving. Simmons verified that the local Muncie address Smith had given on the registration was false, and that the vehicle's license number was registered to a person other than Laron Smith.

Simmons then gave all the information he had gathered, including details of both conversations, the faxed registration form, and the computerized license plate printout, to his superior, Sergeant James Gilliam (Gilliam). On November 22, Gilliam and two officers went to the Comfort Inn to investigate the caller's allegations. From the front desk clerk,[2] Gilliam learned that the occupant of the room had given a local Muncie address, that he had made as many as thirty calls a day to the Detroit, Michigan area, and that he had received a great many calls during his stay. Gilliam verified the clerk's statements by checking the hotel's computerized printout listing those calls. Meanwhile, the investigators watched room 237.[3] They observed several people enter the room during the time Gilliam questioned the clerk.

Subsequently, Gilliam filed an affidavit for a search warrant; a warrant authorizing the search of Bryant's room was issued by Judge Cole, and was executed by the officers. In the cushion of a chair, police noticed a slit; when examined, the chair was found to house a package containing two pounds of cocaine.

Prior to trial, Bryant filed a motion in limine to suppress all evidence recovered pursuant to the search warrant. In the suppression hearing, Simmons testified that, although the initial call he had received was on the drug hotline, he did not recall "anything coming up about drugs at all" in that conversation. Record at 169. He also stated that the caller gave neither a specific room number for the Lamont Brown she claimed was

---

2. Gilliam did not divulge the clerk's name, but referred to him as a "cooperating individual[.]" Record at 144.

3. Neither Thomas's nor Gilliam's testimony reveals that the particular room number, 237, was given to the police.

staying at the Comfort Inn, nor did she state facts which would indicate she had personal knowledge that Lamont Brown was selling drugs.

The trial court denied Bryant's motion to suppress. The cocaine that police had seized pursuant to the warrant was admitted at trial, over counsel's objection, as were the computerized telephone records and Bryant's registration card.

Upon appeal, Bryant attacks the warrant upon two fronts. First, he claims that the trial court erred in refusing to suppress the cocaine found in his hotel room because the warrant was not based upon a sufficient showing of probable cause. In obtaining the warrant, he argues, the officers failed to follow the mandates of I.C. 35–33–5–2 (Burns Code Ed.Repl.1994). As a result, the affidavit, which included neither information establishing the credibility of the original source nor the credibility of the subsequent declarants, was inadequate.

Further, he argues that because much of the information contained within Gilliam's affidavit was transmitted to him through Simmons and through the unnamed caller, the information was nothing more than hearsay upon hearsay. Thus, the trial court erred, he argues, in refusing to suppress the cocaine seized pursuant to the invalid search warrant.

The State counters with an assertion that, as a "concerned citizen," the caller was subject to less rigorous standards for a determination of credibility. Appellee's Brief at 8, 9. It points to the absence of any circumstances which would bring her credibility into question, and contends that Gilliam's subsequent verification of the source's information provided sufficient substantiation to verify both hearsay declarants' credibility. The State argues that the information Gilliam gathered at the motel constituted bases upon which the magistrate could reasonably find that probable cause existed.

Bryant also contends the trial court committed error in failing to suppress evidence obtained via the search warrant because the assertions made by Gilliam in the affidavit were false, and because it did not relate any underlying facts which could provide the bases upon which the caller made her conclusions. He contends that Gilliam knowingly or recklessly made statements that he should have known were false, and that he attested to have personal knowledge of facts contained in the affidavit, when, in actuality, the statements were conjecture based upon assumptions made in the investigation. The State maintains that Bryant has failed to meet his burden to demonstrate that any statements contained within the search warrant are untrue, or that they were made with reckless disregard for the truth so as to render the warrant lacking in probable cause. Additionally, the State contends that even if the questionable portions of the affidavit were excised, the warrant, which recites other facts obtained by Gilliam in his investigation, retains sufficient indicia of probable cause.

The contested affidavit which Gilliam relied upon to obtain the search warrant for Bryant's hotel room reads:

## "PROBABLE CAUSE

IN SUPPORT OF MY ASSERTION AS TO THE EXISTENCE OF PROBABLE CAUSE, THE FOLLOWING FACTS AND CIRCUMSTANCES ARE OFFERED, BASED ON MY PERSONAL KNOWLEDGE:

1) That the Affiant is a Police Officer with the Muncie City Police Department, and has been for some time past, and

2) That the Affiant is currently assigned as a supervisor with the City/County Drug Task Force, and

3) That the Affiant is familiar with the common and natural actions associated with drug dealing, and persons involved in the buying and selling of controlled substances, and

4) That on November 22, 1993, a concerned citizen called the Drug Task Force Hot line [sic] and advised that a subject from Ohio was selling drugs from room

237[4] of the Comfort Inn located on Bethel Ave[.] in Muncie, and[5]

5) That the Affiant contacted the management at the Comfort Inn, and was advised that the subject in question had checked in and paid for several days in advance with cash, and that since the time he checked in, he has received approximately thirty calls a day to his room, and that there have been several persons in and out of the room since his arrival, and

6) That the subject has used at least two (2) different names in obtaining the room and in talking to persons in the Muncie area, and

7) That during his stay at the Motel (Six days) the subject has made at least seventy-two (72) calls to the Detroit[,] Michigan area, and

8) That the subject used a Local Muncie address on the Motel information card, but he has an Ohio License plate on the vehicle he has been operating, and

9) These actions and activities are consistent with the known actions and activities of persons involved in the sale and distribution of controlled substances, and

10) That the Affiant has investigated a large number of drug cases during his assignment with the Drug Task Force, and it is his belief that the actions of this subject fit the normal accepted profile of persons involved in the distribution of narcotics and controlled substances.

THE FOREGOING REPRESENTS THE GROUNDS FOR MY BELIEF. THEREFORE[,] I RESPECTFULLY REQUEST THAT THE COURT ISSUE A SEARCH WARRANT DIRECTING A SEARCH AND SEIZURE OF THE PROPERTY DESCRIBED ABOVE.

I AFFIRM UNDER THE PAINS AND PENALTIES OF PERJURY THAT THE FOREGOING REPRESENTATIONS ARE TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE."

Record at 129–130.

Bryant attacks the content of the affidavit, contending that its allegations did not constitute sufficient probable cause for the search, and that the trial court erred in allowing illegally obtained evidence to be admitted at trial over his objection.[6] Initially, he focuses upon the affidavit's failure to comply with the mandates of I.C. 35-33-5-2, requiring that affidavits based upon hearsay establish the credibility of each of the declarants, most notably, the "concerned citizen" referred to in paragraph four of the affidavit.

In the first instance, the existence of probable cause lies within the determination of the issuing magistrate. *Brooks v. State* (1988) 2d Dist.Ind.App., 526 N.E.2d 1027, 1030. Probable cause for a warrant exists where information "provides a sufficient basis of fact to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime." *Utley v. State* (1992) Ind., 589 N.E.2d 232, 236, *cert. denied,* (1993) 506 U.S. 1058, 113 S.Ct. 991, 122 L.Ed.2d 142. A determination that the amount of information constitutes probable cause is to be made upon an individual, case-by-case basis. *Paw-*

---

4. The numerals "237" in the affidavit which was displayed at the suppression hearing are written in by hand whereas the remainder of the affidavit is typed. This court is in no position to know at what point this information was added. However, as Bryant's counsel has not brought our attention to this issue, and as the text of the affidavit is difficult to read, we must necessarily assume that the numerals "237" appeared upon the face of the affidavit when it was considered by the judge, insofar as the numerals do appear upon the face of the search warrant itself.

5. At this point on the affidavit, it appears that a hand-written partial citation has been added: "465 N.E.2nd[.]" Record at 129.

6. Bryant does not contend that the issuance of the warrant was erroneous, but only that the trial court erred in admitting the evidence. Had he contended that the magistrate erroneously issued the search warrant, we would have confined our review to an examination of the same information which was before the magistrate in order to determine whether she made a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Johnson v. State* (1985) Ind., 472 N.E.2d 892, 900, *reh'g denied.*

*loski v. State* (1978) 269 Ind. 350, 380 N.E.2d 1230, 1232.

■■■ Our Supreme Court has determined that information which is gleaned from cooperative citizens who are either eyewitnesses or victims of a crime may be relied upon in determining whether probable cause exists for a search where there are no circumstances which call the informant's motives into question. *Pawloski, supra,* 380 N.E.2d at 1232. That information received in this manner may be relied upon, however, does not negate the requirement that the information be corroborated. *Id.* When, as here, the informant is neither a victim nor an eyewitness, but falls instead into some "grey area" between the two, the court will determine whether the information is corroborated. *Id.* Likewise, in determining whether the information constitutes probable cause, we cannot disregard the well-established principle that the affidavit contain underlying facts to support a determination of probable cause, not the unsupported conclusions of the affiant. *See Kail v. State* (1988) 1st Dist.Ind. App., 528 N.E.2d 799, 806, *trans. denied.* Here, an examination of the affidavit and of the information elicited from both Simmons and Gilliam in the suppression hearing displays that the affidavit contained assertions which were entirely speculative, and were based upon questionable conclusions made by the investigating officers. Such bare conclusory information, lacking underlying facts, cannot suffice as probable cause upon which to base a search warrant. *Kail, supra* at 806.

Indeed, not only does paragraph four of the affidavit reveal a lack of factual information, but a comparison with Simmons's testimony at the suppression hearing demonstrates that the information which it does contain is, at best, misleading, and at worst, false. The paragraph states that the caller told police of a subject from Ohio who was selling drugs from room 237 of the Comfort Inn. However, Simmons testified, at the suppression hearing, that the subject of drugs never came up in the conversation at all; instead, it is clear that he assumed, based upon the fact that the caller had dialed the Hotline, that drugs were involved: "[W]hy would she be calling the narcotics department of the police department if she didn't have drugs in mind[?]" Record at 173.

The record here reveals that the caller did not provide Simmons with any facts which underlay her suspicions. Simmons' testimony does not demonstrate that the caller provided him with a description of the subject, or that she spoke with personal knowledge. Never did she state that she had witnessed any specific transaction involving drugs; neither did she state any particular type of drugs involved. Moreover, contrary to the affidavit's assertions, Simmons's testimony reveals that the caller did not state that Lamont Brown was dealing drugs. The paragraph simply does not display that the informant had a level of intimacy with the facts which would allow a court to conclude that she had any personal knowledge that a crime had been committed. *See Bradley v. State* (1993) Ind., 609 N.E.2d 420, 423.

Perhaps the greatest fault within paragraph four of the affidavit, however, is that which attributes to the caller a specific room number at the Comfort Inn; yet, Simmons unequivocally testified that the caller made no mention of a room number. Indeed, that room number was, in fact, obtained by Simmons. Simmons's testimony demonstrates that in his investigation of the call, he determined that a Laron Smith, not, as the caller had claimed, a Lamont Brown, was staying at the Comfort Inn in room 237. The paragraph's assertion was based solely upon his speculative assumption that a person with a name vaguely similar to the one the caller gave was necessarily the same person.

The record shows that there exists significant variation between the information given to Simmons by the caller and the information contained in the search warrant's affidavit. Our Supreme Court in *Dolliver v. State* (1992) Ind., 598 N.E.2d 525, 528, addressed a similar situation in which an affidavit upon which a search warrant was based recited facts additional to, and at variation with, the information police had received through an

anonymous tipster. The court determined that, "[W]hen the facts in an affidavit requesting a search warrant are at such variance with the truth ... a warrant issued pursuant to such affidavit is invalid." *Id.*

We would go so far as to say that the facts set forth in paragraph four of the affidavit misrepresented the information given by the informant, and actually attributed additional information to the caller. Notwithstanding that the misrepresentation may not have been intentional upon the part of Gilliam, the affidavit was still misleading upon several points material to the seizure of the cocaine and to Bryant's arrest, and we have already determined that it was in significant variance with the truth as told by Gilliam in the suppression hearing.

■ Even excising those portions we have found to lack factual support, the warrant's remaining paragraphs will not save it; they do not constitute probable cause so as to impart validity to the search of Bryant's hotel room. *See Utley, supra,* 589 N.E.2d at 236 (once false information has been excised, court determines whether remainder establishes probable cause). While Bryant's actions—in making and receiving numerous calls and having several people in and out of his room—may fit a profile which conforms with that of a person dealing illicit drugs, his actions also comport with completely innocent conduct, such as the actions of a businessman travelling in the course of his employ.[7]

The court in *Bigler v. State* (1993) 1st Dist.Ind.App., 602 N.E.2d 509, 516, *trans. denied,* recognized that a suspect's innocent conduct which corroborates information given by a citizen-informant may provide a basis for probable cause. There, the court determined that the important aspect of the noncriminal behavior was the "degree of suspicion" which attached to it. *Id.* Thus, the informant's tape-recorded telephone conversation with the suspect served to confirm her

allegations as to Bigler's operations, and constituted probable cause. Here, there are neither facts nor conversations which could have corroborated the caller's information.

Similarly, the paragraphs containing allegations that Simmons apparently ascertained that the Muncie address Bryant used was false, and that he drove a car with Ohio license plates which was registered to someone else, are simply meaningless in assessment of probable cause to issue a search warrant. These facts reveal no connection to any drug activity, but for Gilliam's assertion that they are somehow within the profile of a person engaged in the sale of controlled substances. *See Stabenow v. State* (1986) 2d Dist.Ind.App., 495 N.E.2d 197, 201.

Additionally, identical reasoning as that employed above applies to invalidate the information in paragraph six of the affidavit which relates that Bryant had used two names in registering at the hotel and in dealing with people in the Muncie area. As aforementioned, the information is sheer speculation upon the part of Simmons, and, therefore, by Gilliam. The sparse information Gilliam had in his possession at the time the warrant was issued does not reveal that he knew Lamont Brown and Laron Smith were one and the same person. Thus, he could not determine whether the suspect had, in fact, used two different names. The statement is entirely conclusory, and cannot constitute an adequate factual basis for probable cause. *See Kail, supra,* 528 N.E.2d at 806. The fact that Bryant, who occupied room 237, was ultimately found to possess a substantial quantity of cocaine does nothing to bolster the State's argument that the search warrant was issued with probable cause.

■ Therefore, we can only conclude that the search warrant at issue here was invalid, as was that in *Dolliver, supra,* 598 N.E.2d 525. Where a search warrant is invalid for any reason, the property seized pursuant to the warrant could not be used

---

7. Additionally, as the caller did not indicate either that Bryant made numerous phone calls or that he had frequent visitors, this additional information, culled from Gilliam's gathered observations, cannot serve as corroboration of the caller's suspicions.

against the defendant at trial. *Moran v. State* (1994) Ind., 644 N.E.2d 536, 540. The admission of evidence so seized, over the defendant's objection, is prejudicial error. *Id.*

 The State argues that the "good faith" exception established in *United States v. Leon* (1984) 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, should serve to protect the search and seizure here. The exception applies if the officers executing the search warrant do so in good faith and without knowledge or reason to know that the affidavit which prompted issuance of the warrant contained false or materially misleading information. It is clear that the good faith exception is not applicable. *See Doss v. State* (1995) 3d Dist.Ind.App., 649 N.E.2d 1045. Here, Gilliam, who signed the probable cause affidavit and who personally obtained the search warrant from Judge Cole, executed the warrant and, along with others, conducted the search. *Bradley v. State* (1993) Ind., 609 N.E.2d 420.

 Gilliam may not utilize the good faith exception upon grounds that it was Simmons who obtained the information from the caller because Gilliam personally and under penalty of perjury affirmed that the representations made were true and accurate.

The court erred in admitting the evidence seized. *Bradley v. State, supra.* Accordingly, the judgment is reversed.

DARDEN, J., concurs.

FRIEDLANDER, J., concurs in result.