ATTORNEYS FOR APPELLANTS

E. Nelson Chipman, Jr.

Richard A. Eaton

Plymouth, Indiana

ATTORNEYS FOR APPELLEE

Jeffrey A. Modisett

Attorney General of Indiana

Katherine L. Modesitt

Deputy Attorney General

Indianapolis, Indiana

IN THE

SUPREME COURT OF INDIANA

)

TERESA D. FIGERT and ) 

BYRON GREEN, )

)

Appellants (Defendants below), ) Indiana Supreme Court

) Cause No. 50S03-9709-CR-473

v. )

) Indiana Court of Appeals 

STATE OF INDIANA, ) Cause No. 50A03-9612-CR-446

)

Appellee (Plaintiff below). ) 

)

­

APPEAL FROM THE MARSHALL SUPERIOR COURT

The Honorable Robert O. Bowen, Judge

Cause No. 50D01-9605-CF-52

Cause No. 50D01-9605-CF-53

­

ON PETITION TO TRANSFER

BOEHM, Justice.

In this interlocutory appeal, defendants Teresa D. Figert and Byron Green challenge the trial court’s denial of their motions to suppress.  With one judge dissenting, the Court of Appeals affirmed.  
Figert v. State
, 683 N.E.2d 1314 (Ind. Ct. App. 1997).  We granted transfer to address application of the “good faith” exception to the exclusionary rule.  We reverse the trial court. 

Factual and Procedural History

As part of an ongoing undercover investigation, a police officer made several controlled purchases of crack cocaine from different men residing in, or at least conducting drug sales from, two of three manufactured homes in a place in Marshall County known as “the Farm.”  The homes were located in a rural area in close proximity to each other in a “U” shape.  Figert and Green lived in the third home.  The probable cause affidavit did not allege that any sales were observed from the third home or that Figert or Green, or anyone meeting their description, sold drugs, or that the third home was a base of operations for drug trafficking.  Besides mere proximity to the general area of the drug sales, the only fact the affidavit detailed as to the third home or Figert and Green was that “[t]here are currently a large number of unidentified individuals living in and frequenting the three trailers.”  The affidavit also made clear that in one of the controlled buys the seller insisted on consummating the transaction outdoors and away from the homes to conceal it from his parents who lived there.  The police officer who made the controlled drug purchases nonetheless concluded in the affidavit that he had “probable cause to believe that additional crack cocaine, paraphernalia, and evidence of crack cocaine dealing will be found within the 
three
 trailers . . . .”  (emphasis added).  Based on the information contained in the affidavit, the trial court issued a warrant authorizing a search of “the three residences at 20831 Upas Road” for, among other things, cocaine and “any and all property related to narcotics trafficking.”  Because some of the controlled purchases were consummated in automobiles driven by the suspects, the warrant also authorized a search of “the vehicles located within the curtilage” of the homes.      

Several police officers, including the affiant, executed the warrant during the early morning hours of May 25, 1996.  A search of Figert’s and Green’s home and Green’s car uncovered incriminating evidence that led to their prosecution for drug-related offenses.  Figert and Green filed separate motions to suppress.  With respect to the home search, they both contended that the warrant was issued without probable cause because the supporting affidavit provided no basis to conclude that cocaine or related paraphernalia would be found in their home.  After denying their motions to suppress, the trial court certified the following questions for interlocutory appeal: (1) “Whether the finding of probable cause for the issuance of a search warrant for all dwellings on the premises . . . was proper when the information used to formulate probable cause and the issuance of a search warrant was based on the activities of two residences that did not involve the [defendants’] residence”; and (2) “Whether the Court’s finding that ‘the totality of the circumstances makes the entire premises suspect’ and thus ‘[a] substantial basis existed for a finding of probable cause to search all dwellings located at the farm’ was correct.”  The Court of Appeals held that there was no probable cause for the issuance of the warrant as to Figert’s and Green’s home, but found that the “good faith” exception applied.  On that basis, the trial court was affirmed.  Judge Staton joined the majority on the first issue but dissented as to the good faith exception.  Because the certified questions do not address the search of the car, the Court of Appeals did not deal with that issue.  Nor do we.
(footnote: 1)  

Standard of Review
    

The parties appear to agree that the warrant was facially valid because it described with sufficient particularity the places to be searched and the things to be seized.  
Steele v. United States
, 267 U.S. 498, 45 S. Ct. 414, 69 L. Ed. 757 (1925); 
Phillips v. State
, 514 N.E.2d 1073, 1075 (Ind. 1987).  The problem both certified questions present is whether the information pleaded in the affidavit supported the finding of probable cause.  Probable cause has long been described as a fluid concept incapable of precise definition.  It is to be decided based on the facts of each case.  
See
, 
e.g.
, 
Ornelas v. United States
, 517 U.S. __, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996).  In deciding whether to issue a search warrant, “[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.”  
Illinois v. Gates
, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).  The duty of the reviewing court is to determine whether the magistrate had a “substantial basis” for concluding that probable cause existed.  
Id.
 at 238-39.  “[S]ubstantial basis requires the reviewing court, with significant deference to the magistrate’s determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination” of probable cause.  
Houser v. State
, 678 N.E.2d 95, 99 (Ind. 1997).  “Reviewing court” for these purposes includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision.  
Id.
 at 98.  In this review, we consider only the evidence presented to the issuing magistrate and not 
post hac
 justifications for the search.  
Seltzer v. State
, 489 N.E.2d 939, 941 (Ind. 1986).  

I.  Probable Cause to Search the Defendants’ Home

In addressing the probable cause question, the Court of Appeals correctly stated and applied several principles of search and seizure law.  As a general proposition, a search of multiple units at a single address must be supported by probable cause to search each unit and is no different from a search of two or more separate houses.
(footnote: 2)  Accordingly, there must be a showing of probable cause to search Figert’s and Green’s home, not just the other homes.  We agree with the Court of Appeals that the determination that probable cause existed for searching the third home lacked a substantial basis.  “[T]he reasonable inferences drawn from the totality of the evidence,” 
Houser
, 678 N.E.2d at 99, at most show that drugs were being sold from the first two homes by persons who lived in those homes or used them as a base of operations for drug trafficking.  “Unidentified individuals,” who may or may not have been involved in the drug sales, were “frequenting the three trailers.”  This all occurred in the general vicinity of the three homes, but does not support the conclusion that the third home or Figert and Green were necessarily involved.  In short, the probable cause affidavit does not allege facts that would establish a fair probability that evidence of crime would be found in Figert’s and Green’s home.  Other cases involving a lack of nexus between a controlled drug buy and the place to be searched have held the affidavit insufficient to establish probable cause.  
Cf.
 
Flaherty v. State
, 443 N.E.2d 340 (Ind. Ct. App. 1982) (search of defendant’s apartment lacked probable cause where police officer saw informant enter the same apartment building to buy drugs but not the defendant’s apartment in particular).    

As the Court of Appeals noted, an exception to the requirement of probable cause to search each unit at one address has been recognized where the units are under the common dominion or control of the target of the investigation or, as the State puts it, are used as a “collective dwelling.”  In that situation, some decisions have held that probable cause to search one unit or part of the premises supports a search of the rest.
(footnote: 3)  However, there is an insufficient showing here of collective occupation or control.  The probable cause affidavit alleged that different persons lived in the first two homes and that the officer bought drugs from both occupants on separate occasions.  The affidavit did not allege any connection between any of the controlled drug buys and the third home.  Significantly, an effort was made to conceal the illegal activities from some of the occupants of the first two homes.  Thus, the facts cut against the view that the Farm was a collective drug-dealing operation and indicate that some of the occupants may not have been aware of illegal activity.  If the officer who sought the warrant had information tending to show involvement by the third home in the drug sales, that information should have been offered when the warrant was issued.  
United States v. Simpson
, 944 F. Supp. 1396, 1409 (S.D. Ind. 1996) (“single unit” exception could not sustain warrant where officers failed to present evidence to the issuing magistrate showing that multiple units were being used as single unit).  In short, as all the judges of the Court of Appeals held, probable cause was not established by the affidavit.

As a final matter, the same search warrant was used in this case to search three separate residences occupied by different persons.  Courts in other jurisdictions have viewed the use of a single search warrant for this purpose with disfavor, 
see
, 
e.g.
, 
Williams v. State
, 240 P.2d 1132, 1137 (Okla. Crim. App. 1952), as have some of our decisions.  
See
, 
e.g.
, 
Hess v. State
, 198 Ind. 1, 5, 151 N.E. 405, 406 (1926) (dicta) (“[A] single search warrant will not authorize a search of distinct premises each occupied by a different person.”).  Use of one warrant to search several dwellings, whether occupied by the same person or different parties, may confuse the determination whether probable cause existed to search each residence.  For that reason, where police seek a warrant to search multiple residences, the better practice is to obtain a separate warrant for each residence or place unless police proceed under a “collective dwelling” theory, in which case the facts supporting that conclusion should be set forth.  In any event, facts alleged in an affidavit to establish probable cause to search each unit or residence in a multiunit dwelling are better set forth in a separate paragraph for each unit where feasible to avoid possible confusion.  This case illustrates why these practices are preferred. 

II.  Good Faith Exception to the Exclusionary Rule

A majority in the Court of Appeals held that the evidence uncovered as a result of the search of Figert’s and Green’s home was admissible under the “good faith” exception to the exclusionary rule announced in 
United States v. Leon
, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).  This issue was not presented in the trial court in the motions to suppress and was not certified as a question for interlocutory appeal.  However, we address the issue on the merits because it will likely arise on remand, the parties have discussed it in their briefs, and because we disagree with the Court of Appeals’ conclusion that the evidence found in the defendants’ home is admissible. 

Leon
 held that where police officers rely in objective good faith on a warrant later found to be defective, so that suppression would not further the exclusionary rule’s objective of deterring police misconduct, the Fourth Amendment does not require that the evidence be excluded.  However, the Supreme Court cautioned in 
Leon
 that certain police conduct would not qualify for the exception, including where the warrant was based on an affidavit “so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.”  
Id.
 at 923 (internal quotation marks and citation omitted).  Because the same officer here filed the probable cause affidavit and participated in the execution of the warrant based on the affidavit, we must decide whether the officer’s reliance on the warrant was entirely unreasonable notwithstanding the magistrate’s decision to issue the warrant.        

The good faith exception necessarily assumes that police reliance on a warrant can be objectively reasonable despite the lack of probable cause.  Emphasizing this point, the Court of Appeals majority reasoned from the premise that “[w]e would . . . emasculate the exception if, in practice, we equate the reasonableness of the officer’s belief with the establishment of probable cause in the affidavit.”  
Figert
, 683 N.E.2d at 1320.  Equally critical, however, is that the good faith exception not “be so broadly construed as to obliterate the exclusionary rule.”  
Dolliver v. State
, 598 N.E.2d 525, 529 (Ind. 1992); 
see
 
also
 
Lloyd v. State
, 677 N.E.2d 71, 78 (Ind. Ct. App. 1997) (Najam, J., dissenting) (“If a mere hunch were sufficient to support an official belief in the validity of a warrant, the good faith exception would swallow the constitutional prohibition against unreasonable search or seizure . . . .”), 
reh’g
 
denied
, 
trans.
 
denied
.  In persuading the Court of Appeals that the exception was available here, the State pointed to four considerations that it claimed illustrated reasonable reliance on the warrant: (1) the homes were in close proximity in a “U” shape; (2) the homes were in a rural area; (3) the homes were owned by the same person and had the same address; and (4) a large number of unidentified individuals were living in and frequenting the three homes.  Without further explanation, the Court of Appeals held that “the officers executing the warrant . . . could reasonably believe that probable cause to search a conclave consisting of the three trailers and accumulated junk cars located at a particular address had been established through the indicia presented by [the officer’s] personal experiences and observations.”  
Figert
, 683 N.E.2d at 1320-21.     

We disagree.  The first and the third of these factors apply to any multiunit rental facility.  The second is irrelevant: Hoosiers who live in rural areas are entitled to no less protection against invasion of their homes.  The fourth, assuming it applied to the third home, is in and of itself innocuous.  Probable cause clearly existed with respect to the first two homes, and the totality of the circumstances established some suspicion or possibility of a joint drug-dealing enterprise at the Farm.  But this is not enough.  The affidavit did not allege any facts linking the third home to the surrounding criminal activity.  The lack of any nexus is a critical point in assessing the reasonableness of the officer’s reliance on the warrant.  
Cf.
 
Stabenow v. State
, 495 N.E.2d 197 (Ind. Ct. App. 1986) (holding that cocaine seized pursuant to search of defendant’s car was not admissible under good faith exception because affidavit did not establish connection between car and criminal activity).  Objective good faith “requires officers to have a reasonable knowledge of what the law prohibits.”  
Leon
, 468 U.S. at 919 n.20 (citation omitted).  As Judge Staton observed in dissent, police officers are generally aware, or at least are charged with knowing, that probable cause is required to search a dwelling.  Since 1905, the General Assembly has prescribed specific requirements for the form and content of probable cause affidavits in this state.  1905 Ind. Acts, ch. 169, § 57.  The most recent statute was enacted in 1981 in a major recodification of the criminal code.  1981 Ind. Acts, P.L. 298, § 2; 
codified
 
at
 
Ind. Code
 § 35-33-5-2 (1993).  Police compliance with the statute in the vast majority of cases has bred familiarity with so basic a requirement as a particularized showing of probable cause.  

This is not a case involving the technical evidentiary questions that can arise in using hearsay to establish probable cause.  Most Indiana appellate decisions upholding the admission of evidence under the good faith exception involved reliance on hearsay whose credibility was later found to be inadequately established.  
See
, 
e.g.
, 
State v. Johnson
, 669 N.E.2d 411 (Ind. Ct. App. 1996), 
trans.
 
denied
.  In contrast, here the officer obtained the warrant primarily based on his own observations and firsthand knowledge.  There is no technically flawed hearsay linking Figert’s and Green’s home to the drug dealing that in hindsight might make reliance on the warrant objectively reasonable. 

The good faith exception was created in large part because of the practical reality that once a neutral and detached magistrate has issued a search warrant, “there is literally nothing more the policeman can do in seeking to comply with the law.”  
Leon
, 468 U.S. at 921 (internal quotation marks and citation omitted).  Because the magistrate is the disinterested bulwark standing in the way of unlawful searches and seizures based on a warrant, the magistrate’s stamp of approval “normally suffices” to establish good faith.  
Id.
 at 922 (internal quotation marks and citation omitted).  
Leon
 emphasized that “the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates.”  
Id.
 at 916.  It is also true, however, that “[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.”  
Gates
, 462 U.S. at 239.  In a conclusory fashion, the affidavit stated that the officer had “probable cause to believe that additional crack cocaine, paraphernalia, and evidence of crack cocaine dealing will be found within the 
three
 trailers . . . .”  (emphasis added).  This statement is nothing more than the officer’s own opinion and cannot be relied on to authorize a search not supported by the facts.  Because the warrant here was issued based solely on the officer’s opinion, the officer’s reliance cannot be deemed objectively reasonable under 
Leon
.     

Our decisions have repeatedly recognized the State’s substantial interest in combating the menace of the illegal drug trade.  
See
, 
e.g.
, 
Polk v. State
, 683 N.E.2d 567, 571 (Ind. 1997) (“The opinions of this Court are filled with tales of drug possession and dealing that spun out of control and erupted into violence.”).  The evidence found as a result of the illegal search here may be relevant and trustworthy -- indeed quite incriminating -- but as long as the exclusionary rule is the law that is not the issue in a motion to suppress.  It is all too common that illegal drugs are sold in close proximity to citizens who by all appearances, if not in fact, are not involved.  If probable cause could be so easily imputed from one dwelling to another through overbroad application of the 
Leon
 exception, nothing would prevent searches of residences merely because of the fortuity of their proximity to illegal conduct.  This would reduce the Fourth Amendment to an “empty promise.”  
Mapp v. Ohio
, 367 U.S. 643, 660, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).  Courts must be especially vigilant where the place to be searched is the home: “The Fourth Amendment protects the individual’s privacy in a variety of settings.  In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual’s home . . . .”  
Payton v. New York
, 445 U.S. 573, 589, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980).  The Fourth Amendment, which was framed against the backdrop of colonial-era abuses of the general warrant,
(footnote: 4) compels a more specific showing of possible involvement in crime for the evidence to be admissible.
(footnote: 5)
 
Conclusion

   This case is remanded with instructions to grant defendant Figert’s motion to suppress in its entirety and defendant Green’s motion to suppress with respect to the home search, and for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.

FOOTNOTES
1:  
In her motion to suppress, Figert did not specify the source of her claim and Green claimed only that his “constitutional right to be free from unreasonable search and seizure” was violated.  Both now assert that the search in this case violated the Fourth Amendment to the United States Constitution; Article I, Section 11 of the Indiana Constitution; and Indiana Code §§ 35-33-5-1 and 35-33-5-2. 
 We 
treat the appeal as raising a valid claim under the state and federal constitutions, which both require probable cause for the issuance of a search warrant and the exclusion of evidence obtained due to an illegal search or seizure.  
Compare
 
Callender v. State
, 193 Ind. 91, 138 N.E. 817 (1922) 
with
 
Mapp v. Ohio
, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).

2:  
See
, 
e.g.
, 
Thompson v. State
, 198 Ind. 496, 500, 154 N.E. 278, 279 (1926); 
United States v. Hinton
, 219 F.2d 324, 325-26 (7th Cir. 1955); 
United States v. Alexander
, 761 F.2d 1294, 1301 (9th Cir. 1985).  

3:  
See
, 
e.g.
, 
United States v. Butler
, 71 F.3d 243, 249 (7th Cir. 1995); 
United States v. Simpson
, 944 F. Supp. 1396, 1409 (S.D. Ind. 1996).

4:  
See
, 
e.g.
, 
Payton
, 445 U.S. at 583 & n.21; 
Weeks v. United States
, 232 U.S. 383, 389-90, 34 S. Ct. 341, 58 L. Ed. 652 (1914), 
overruled in part on other grounds by
 
Elkins v. United States
, 364 U.S. 206, 80 S. Ct. 1437, 4 L. Ed. 2d 1669 (1960) 
and
 
Mapp v. Ohio
, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).

5:  
The General Assembly has codified a version of the good faith exception at Indiana Code § 35-37-4-5.  Because we conclude that the evidence seized in this case is not admissible under 
Leon
, we need not decide whether the statute also requires exclusion of the evidence.