



FILED

Feb 20 2020, 12:32 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 19S-CR-528

## Derek Heuring,
*Appellant (Defendant)*

—v—

## State of Indiana,
*Appellee (Plaintiff)*

---

Argued: November 7, 2019 | Decided: February 20, 2020

Appeal from the Warrick Superior Court, No. 87D02-1808-F2-435
The Honorable Robert R. Aylsworth, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 19A-CR-140

---

**Opinion by Chief Justice Rush**

Justices David, Massa, Slaughter, and Goff concur.

**Rush, Chief Justice.**

Law enforcement secured a warrant to plant a small, inconspicuous GPS tracking device on Derek Heuring's Ford Expedition. The device gave officers regular location readings for about a week—until it abruptly stopped providing updates. Over the next ten days, the officers could not determine what happened. But then, after discovering that the tracker was no longer attached to Heuring's car, an officer obtained warrants to search Heuring's home and his father's barn for evidence of the device's theft.

We hold that those search warrants were invalid because the affidavits did not establish probable cause that the GPS device was stolen. We further conclude that the affidavits were so lacking in probable cause that the good-faith exception to the exclusionary rule does not apply. Thus, under the exclusionary rule, the evidence seized from Heuring's home and his father's barn must be suppressed. We reverse and remand.

# Facts and Procedural History

In summer 2018, Warrick County Sheriff's Department Officers Matt Young and Jarret Busing believed that Derek Heuring was dealing methamphetamine. To monitor his movements for thirty days, Officer Young obtained a warrant to place one of the department's GPS tracking devices onto Heuring's Ford Expedition.

On July 13, Officer Young attached the device—"a plain black plastic box" with no markings. The officers received regular location readings for the next six days. But on the seventh day, they received a "final update" from the tracker, showing Heuring's car at his home. Three days later, the officers were still not receiving location information even though a battery reading showed the device was fully charged. So, Officer Young contacted a technician with the GPS device's manufacturer. The technician told him that "the satellite was not reading," which "could" have been caused by the device being "unplugged and plugged back in."

At some point over the next week, Officer Busing saw the vehicle in Heuring's father's barn, which he thought may be affecting the device's

satellite reception. Then on July 30—ten days after receiving the final location reading—the officers twice drove by the barn and Heuring's home. They first saw the vehicle parked outside of the barn and later saw it parked outside of the home.

After seeing the car away from the barn, Officer Young again contacted a technician "to see if the GPS would track now." The technician informed him "that the device was not registering and needed a hard reset." Officer Young went to retrieve the device from the vehicle, but it was gone. Though Officer Busing was "aware" that a GPS device had previously become "disengaged from a vehicle by accident," that device "was able to be located" because it was still transmitting satellite readings.

Based on the above information, the officers believed the device had been stolen and was in either Heuring's home or his father's barn. So, Officer Busing filed affidavits for warrants to search each location for evidence of "theft" of the GPS device. A magistrate issued both search warrants; and within the next hour, law enforcement executed them.

While looking for the device, officers found drugs, drug paraphernalia, and a handgun. Each search was stopped, and Officer Busing sought and obtained warrants to search the house and barn for narcotics. During those subsequent searches, officers located the GPS device, as well as additional contraband. Heuring was arrested and charged with several offenses.

Before trial, Heuring moved to suppress the seized evidence, challenging the validity of the search warrants under both the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution. Heuring argued that the initial search warrants were issued without probable cause that evidence of a crime—theft of the GPS device—would be found in either his home or his father's barn. After a hearing, the trial court denied Heuring's motion. On interlocutory appeal, a panel of the Court of Appeals affirmed. *Heuring v. State*, No. 19A-CR-140, 2019 WL 3226992, at *1, *4 (Ind. Ct. App. July 18, 2019).

We granted transfer, vacating the Court of Appeals decision. Ind. Appellate Rule 58(A).

## Standard of Review

The trial court upheld the magistrate's finding of probable cause to issue two search warrants. We review the trial court's decision de novo, as it concerned the constitutionality of a search. *Marshall v. State*, 117 N.E.3d 1254, 1258 (Ind. 2019).

But we apply a deferential standard of review to the magistrate's probable cause finding, affirming if the magistrate had a "substantial basis" for making that decision. *McGrath v. State*, 95 N.E.3d 522, 527 (Ind. 2018). Our focus is "whether reasonable inferences drawn from the totality of the evidence support" the finding. *Query v. State*, 745 N.E.2d 769, 771 (Ind. 2001). In making this determination, "we consider only the evidence presented to the issuing magistrate" and not post hoc justifications for the search. *Figert v. State*, 686 N.E.2d 827, 830 (Ind. 1997).

## Discussion and Decision

Both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution require search warrants based on probable cause. U.S. Const. amend. IV; Ind. Const. art. 1, § 11. Our General Assembly has codified this constitutional requirement in Indiana Code section 35-33-5-2, which specifies the information that must be included in an affidavit supporting a search warrant. *See* Ind. Code § 35-33-5-2 (2019). Though a "fluid concept," probable cause exists when the affidavit establishes "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 232, 238 (1983).

When a magistrate concludes that an affidavit establishes probable cause, we accord that determination great deference. *United States v. Leon*, 468 U.S. 897, 914 (1984). But this deference "is not boundless." *Id.* A search

warrant issued without probable cause is invalid and thus the subsequent search illegal. *Shotts v. State*, 925 N.E.2d 719, 724 (Ind. 2010). Under the exclusionary rule—unless an exception applies—evidence obtained both directly **and** derivatively from an illegal search must be suppressed. *See Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016); *Dolliver v. State*, 598 N.E.2d 525, 527, 529 (Ind. 1992).

Heuring argues that the initial search warrants for his home and his father's barn were invalid because the accompanying affidavits failed to establish probable cause that a crime had been committed. He thus asserts that the seized evidence pursuant to both the initial search warrants and the subsequently issued warrants must be suppressed. The State disagrees, maintaining that the affidavits were supported by probable cause. Alternatively, the State contends that, even if the warrants were invalid, the good-faith exception to the exclusionary rule applies, making suppression unnecessary.

We agree with Heuring. The initial search warrants were invalid because the affidavits did not supply probable cause that the GPS device was stolen. And because reliance on the invalid warrants was objectively unreasonable, the good-faith exception to the exclusionary rule does not apply. Thus, all direct and derivative evidence obtained as a result of the invalid warrants must be suppressed.

## I. The affidavits do not provide a substantial basis of fact from which a magistrate could find probable cause that the GPS tracking device was stolen.

A search warrant affidavit must include facts that show, when viewed under the totality of the circumstances, a fair probability that a crime has been committed. *See Gates*, 462 U.S. at 238. Put differently, the affidavit must link the object of the search with criminal activity. I.C. § 35-33-5-2(a)(1)–(2); *see also Berger v. New York*, 388 U.S. 41, 59 (1967) (observing that the purpose of the probable cause requirement is "to keep the state out of

constitutionally protected areas until it has reason to believe that a specific crime has been or is being committed").

Here, the warrants authorized law enforcement to search Heuring's home and his father's barn for evidence of theft of the sheriff department's GPS tracking device. So, to establish probable cause, the affidavits needed to show a fair probability that someone (1) at least "knowingly" exerted "unauthorized control over property of another person" and (2) did so "with intent to deprive the other person of any part of its value or use." I.C. § 35-43-4-2(a) (defining "theft").

The affidavits include the following facts, which the State maintains established probable cause that the device was stolen. The officers saw Heuring's car at his house and in his father's barn after the tracker stopped working. The officers knew that neither the battery nor the barn caused the device to stop working. And the officers did not believe the tracker had been accidentally dislodged for two reasons: first, Officer Busing was aware of a time when a similar device had become dislodged but was later found because it kept signaling; and second, a technician told Officer Young that the tracker "could have been unplugged and plugged back in to cause" the satellite to stop reading despite the fully charged battery.

As explained below, we disagree that these facts show a fair probability that a theft—or any crime—occurred. Specifically, the affidavits fail to establish probable cause in two respects. They lack information (1) that any control over the GPS device was knowingly unauthorized or (2) that there was an intent to deprive the sheriff's department of the GPS device's value or use.

### A. The affidavits lack information that any control over the GPS device was knowingly unauthorized.

The affidavits fail to show a fair probability that any "control" over the tracker was "knowingly . . . unauthorized." Several statutory definitions are helpful in reaching this conclusion.

A person engages in conduct "knowingly" if "he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b). To exercise "control" over property, one must "obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property" or "secure, transfer, or extend a right to property." I.C. § 35-43-4-1(a). And, as relevant here, control is "unauthorized" if it is exerted "without the other person's consent" or "in a manner or to an extent other than that to which the other person has consented." *Id.* § 1(b)(1)–(2).

Putting this together, the affidavits needed to establish probable cause that someone—aware of a high probability that they were doing so—took the GPS device from Heuring's vehicle without proper consent from the sheriff's department. The affidavits, however, are devoid of the necessary information to make such a showing. Instead, they support a fair probability only that Heuring—or someone—found a small, unmarked black box attached to the vehicle, did not know what (or whose) the box was, and then took it off the car.

In the affidavits, Officer Busing notes that the GPS device "placed on the subject vehicle" was "black in color [and] approximately" six inches by four inches. The affidavits also include facts tending to show that, at some unknown time over a ten-day period, the device was removed. That's all. There is no evidence of who might have removed it. And there is nothing about markings or other identifying features on the device from which someone could determine either what it was or whose it was. In other words, what the affidavits show, at most, is that Heuring **may** have been the one who removed the device, knowing it was not his—not that he knew it belonged to law enforcement.

To find a fair probability of unauthorized control here, we would need to conclude that Hoosiers don't have the authority to remove unknown, unmarked objects from their personal vehicles. *See Unauthorized*, Black's Law Dictionary (10th ed. 2014) (defining the term as "[d]one without authority"); *see also Woods v. State*, 514 N.E.2d 1277, 1280 (Ind. Ct. App. 1987) (finding it "ludicrous" to permit the search of a suspect's home for evidence of theft based on an affidavit that provided "no facts to indicate"

unauthorized control). Reaching such a conclusion—on these facts—would be illogical.

Thus, the affidavits lack evidence showing a fair probability that any "control" over the device was "knowingly . . . unauthorized." Given this factual deficiency, the affidavits are legally inadequate to establish probable cause that the device was stolen. Though this failure alone is fatal to the warrants' validity, the affidavits are deficient in another respect.

## B. The affidavits lack information that there was an intent to deprive the sheriff's department of the GPS device's value or use.

The affidavits also fail to show a fair probability that someone had the intent to deprive the sheriff's department of any part of the tracker's value or use. A person acts "intentionally" when "it is his conscious objective to do so." I.C. § 35-41-2-2(a). Intent is a mental function; and so, absent an admission, it "can be inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points." *Phipps v. State*, 90 N.E.3d 1190, 1195–96 (Ind. 2018) (quoting *McCaskill v. State*, 3 N.E.3d 1047, 1050 (Ind. Ct. App. 2014)); *see also State v. McGraw*, 480 N.E.2d 552, 554 (Ind. 1985).

Here, however, the affidavits do not include facts showing conduct pointing to **any** natural and usual sequence. Rather, they merely describe a ten-day period during which the officers lost track of the GPS device. And thus, the affidavits support nothing more than speculation—a hunch that someone removed the device with the conscious objective to deprive the sheriff's department of its value or use.

But a hunch falls far short of showing probable cause. *See Navarette v. California*, 572 U.S. 393, 397 (2014) (recognizing that a mere hunch doesn't even create reasonable suspicion, a standard that is less demanding than probable cause). True, removing an unknown device from a car may incidentally deprive the device's owner of its value or use. But without

any evidence of the requisite "intent," there is no crime. *See McGraw*, 480 N.E.2d at 554 (reasoning that intent cannot be inferred "when the natural and usual consequences of the conduct charged and proved are not such as would effect the wrong which the statute seeks to prevent"); *Roark v. State*, 234 Ind. 615, 619, 130 N.E.2d 326, 327 (1955) (reiterating the "well settled general principle of law that a crime is not committed if the mind of the person doing the act is innocent"). And here, the affidavits do not include facts supporting a fair probability that someone removing the device had the intent to deprive.

In sum, though the affidavits allege criminal activity, the facts they recite—when viewed under the totality of the circumstances—relate exclusively to noncriminal behavior and fail to connect the object of the search (the GPS device) with the alleged criminal activity (its theft). *See Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967). Indeed, the affidavits provide nothing more than a tenuous and conclusory suggestion that the tracker was stolen. Thus, the search warrants, unsupported by probable cause, were invalid. And unless an exception to the exclusionary rule applies, the evidence subsequently obtained must be suppressed.

## II. The affidavits are so lacking in indicia of probable cause that the good-faith exception does not apply.

Suppression of illegally obtained evidence is not required "if the police relied on the warrant in objective good faith." *Jackson v. State*, 908 N.E.2d 1140, 1143 (Ind. 2009) (citing *Leon*, 468 U.S. at 923). The State—in a single paragraph—argues that the good-faith exception applies. Heuring disagrees, maintaining that there was a "total lack of probable cause" and thus, the officers could not reasonably assert that they relied on "the warrants in good faith." We agree with Heuring.

The Supreme Court of the United States crafted the good-faith exception to the exclusionary rule in *Leon*. The following year, our Court of Appeals adopted that exception for claims brought under Article 1, Section 11 of the Indiana Constitution, and this Court followed suit a few

years later. *See Mers v. State*, 482 N.E.2d 778, 783 (Ind. Ct. App. 1985); *Hopkins v. State*, 582 N.E.2d 345, 351 (Ind. 1991).

But even before those decisions, our General Assembly codified a good-faith exception. *See* P.L. 323-1983, § 1 (codified at Ind. Code § 35-37-4-5 (1983 Supp.)). It provides, in relevant part, that suppression is not required if the evidence is obtained pursuant to

> a search warrant that was properly issued upon a determination of probable cause by a neutral and detached magistrate, that is free from obvious defects other than nondeliberate errors made in its preparation, and that was reasonably believed by the law enforcement officer to be valid.

I.C. § 35-37-4-5(b)(1)(A). Here, there are no allegations that the magistrate was not "neutral," and there are no "obvious defects" with either affidavit. Thus, our focus is whether the search warrants—despite lacking probable cause—were "reasonably believed" to be valid.

Such belief in the warrants' validity is not reasonable if the warrants were based on affidavits "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (cleaned up); *Jackson*, 908 N.E.2d at 1143. And "indicia" requires sufficient signs or indications of probable cause. *See Indicia*, Black's Law Dictionary (10th ed. 2014).

In applying this standard, our focus is not on the magistrate's decision to issue the warrant; rather, it is on law enforcement's decision to seek and execute the warrant. *See Leon*, 468 U.S. at 922 n.23. And this is **not** an inquiry into what the particular officer–affiant subjectively believed—it is one of "objective reasonableness." *Id.* at 923 n.24. In other words, we ask whether a nameless, "reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n.23.

We conclude that these affidavits were devoid of information linking the GPS device to criminal activity and thus were so lacking in indicia of

probable cause that reliance on them was objectively unreasonable. Though Officer Busing obtained the warrants to search for evidence of theft, the affidavits did not include facts supporting essential elements of the alleged crime. Rather, they were based on noncriminal behavior, a hunch, and a conclusory statement. Thus, a reasonably well-trained officer, in reviewing these affidavits, would have known that they failed to establish probable cause and, without more, would not have applied for the warrants. *See Woods*, 514 N.E.2d at 1283 (finding the good-faith exception did not apply where the affidavits provided "no basis for believing a crime had been committed").

In reaching this conclusion, we find support in *Figert v. State*, 686 N.E.2d 827, 832–33 (Ind. 1997). There, we held that the good-faith exception did not apply because the search warrant affidavit provided only a conclusory statement—with no factual support—that drugs would be found inside Figert's trailer. *Id.* at 833. The trailer was one of three in close proximity, and we found that "probable cause clearly existed with respect to the first two homes" and there was "suspicion or possibility of a joint drug-dealing enterprise." *Id.* at 832 (cleaned up). But this was "not enough" to search Figert's trailer because the affidavit failed to allege facts linking his trailer to the surrounding criminal activity. *Id.* So, because the warrant was issued based "solely on the officer's opinion," we held that the "officer's reliance" on the warrant was not "objectively reasonable." *Id.* at 833. The same is true here.

Similar to the officer in *Figert*, Officer Busing filed the affidavits and participated in executing the search warrants. *See id.* at 831–32. And in those affidavits, he concluded that "he has good and probable cause to believe that the [GPS device] constituting fruits, instrumentalities and evidence of the aforesaid crime of THEFT are being concealed in or about" Heuring's home or his father's barn. But as discussed above, the affidavits do not include facts showing more than a hunch that the GPS device was stolen. And so, just as in *Figert*, the officer's reliance on his own opinion—unsupported by the facts—is not objectively reasonable. The good-faith exception does not apply.

In reaching this decision, we are mindful that the good-faith exception is regularly used by courts—including ours—to avoid the exclusionary rule. And such frequent application is sound: a primary objective of the exclusionary rule is to deter police misconduct, which should, in theory, be rare. *See Wright v. State*, 108 N.E.3d 307, 314 (Ind. 2018). Indeed, many cases applying the exclusionary rule involve egregious police conduct like falsifying information; omitting important facts; or relying solely on uncorroborated, non-credible informants. *See, e.g., Jaggers v. State*, 687 N.E.2d 180, 185–86 (Ind. 1997); *Dolliver*, 598 N.E.2d at 529.

But the rule is also meant to deter "reckless" conduct. *Herring v. United States*, 555 U.S. 135, 144 (2009); *Gerth v. State*, 51 N.E.3d 368, 375 (Ind. Ct. App. 2016). And we find it reckless for an officer–affiant to search a suspect's home and his father's barn based on nothing more than a hunch that a crime has been committed. In reaching this conclusion, we do not question Officer Busing's subjective good faith. But that is not the test. If it were, "the people would be secure in their persons, houses, papers, and effects, only in the discretion of the police." *Beck v. Ohio*, 379 U.S. 89, 97 (1964) (cleaned up). We are also aware that exclusion of the evidence here may result in criminal behavior going unpunished. Yet, "there is nothing new in the realization that the Constitution sometimes insulates the criminality of a few in order to protect the privacy of us all." *Arizona v. Hicks*, 480 U.S. 321, 329 (1987).

In short, reliance on these affidavits was objectively unreasonable, and we are confident that applying the exclusionary rule here will deter similar reckless conduct in the future. Concluding otherwise would let the good-faith exception swallow the exclusionary rule—at least in cases that are bereft of evidence linking the object of a search with the alleged offense. *See Dolliver*, 598 N.E.2d at 529 (recognizing that the good-faith exception "cannot be so broadly construed as to obliterate the exclusionary rule"); *Lloyd v. State*, 677 N.E.2d 71, 78 (Ind. Ct. App. 1997) (Najam, J., dissenting) ("If a mere hunch were sufficient to support an official belief in the validity of a warrant, the good faith exception would swallow the constitutional prohibition against unreasonable search or seizure . . . ."), *trans. denied*. This we will not do.

Thus, the exclusionary rule requires suppression of all evidence seized from Heuring's home and his father's barn. The evidence found during the initial search of each location must be excluded because those searches were illegal. And it was "by exploitation of that illegality" that law enforcement secured warrants to search each location a second time. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). As a result, the evidence found during those subsequent searches must also be excluded as "fruit of the poisonous tree." *Id.*

# Conclusion

The initial search warrants were invalid because the accompanying affidavits did not provide a substantial basis to support the magistrate's probable cause finding. Further, the good-faith exception to the exclusionary rule does not apply, and thus, the evidence obtained from Heuring's home and his father's barn must be suppressed. We reverse and remand for proceedings consistent with this opinion.

David, Massa, Slaughter, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANT
Michael C. Keating
Andrew C. Carroll
Law Offices of Steven K. Deig, LLC
Evansville, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Supervising Deputy Attorney General
Indianapolis, Indiana