

# IN THE
# Court of Appeals of Indiana

Norman Thomas, II,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

May 05 2025, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

May 5, 2025

Court of Appeals Case No.
24A-CR-1731

Appeal from the Hendricks Superior Court

The Honorable Mark A. Smith, Judge

Trial Court Cause No.
32D04-2301-F5-13

---

**Opinion by Judge Tavitas**
Judges Felix and DeBoer concur.

**Tavitas, Judge.**

## Case Summary[1]

In this interlocutory appeal, Norman Thomas II appeals the denial of his motion to suppress drug evidence obtained during a search of his home pursuant to two search warrants. Thomas argues that the trial court erred by denying his motion to suppress because both search warrants were invalid and because the good-faith exception to the exclusionary rule does not apply to either search. We conclude that the first search warrant is invalid because it was unsupported by probable cause and the items listed as sought to be searched were not sufficiently particularized. Furthermore, the good-faith exception does not apply to the first search. Because the first search was invalid, the second search was necessarily invalid as well, and the evidence obtained from the searches must be suppressed. Accordingly, we reverse the decision of the trial court.

## Issues

Thomas raises three issues; however, we find the following two issues dispositive:

      I.     Whether the first search warrant was valid under the Fourth Amendment.

---

[1] We held oral argument at Mishawaka High School on March 28, 2025. We thank Mishawaka High School for their warm hospitality and excellent questions, and we thank counsel for their advocacy and preparedness.

> II. Whether the good-faith exception renders the first search valid.

## Facts

On January 25, 2023, law enforcement officers with the Plainfield Police Department received a report from James Laser that two Translift mobile home trailer lifters, each the size of a small car, were stolen from his business. Security camera footage showed that, at approximately 3:50 a.m. that morning, two vehicles with trailers—an SUV and a "black extended cab truck that was missing the bed"—pulled up to the lot.[2] Ex. Vol. III p. 3. The video of the footage apparently did not capture the Translifts being loaded onto the vehicles and/or the Translifts being hauled away. Laser valued each Translift at $60,000. He claimed that one would need "knowledge of how to operate" the Translifts in order to load them onto the trailers. *Id.*

Later that day, officers received a report that Laser had located what he believed to be the black truck depicted in the surveillance footage several miles away. The officers arrived at the reported location and located a truck matching the one from the surveillance footage parked on the public street beside Thomas' residence at 10646 East County Road 100 South near the intersection with Kathy Lane. Miscellaneous "construction equipment and power tools" lay around the house. *Id.* A yard behind the house was

---

[2] The security footage is not included in the record.

surrounded by a six-to-eight-foot-tall privacy fence. The officers could not see over the fence into the yard, but they could see a small barn. The truck was parked on the public street near the gate to the yard.

[5] Law enforcement discovered that the black truck's license plate was registered to a white Chevy.[3] Detective Sam Keifer applied for a search warrant to search the residence and surrounding property. The search warrant application listed items sought to be searched as: (1) "[a]ny and all papers, documents and other items of personal property that may aid in the identification of the individuals involved in the **trafficking of controlled substances** at the residence . . . "; (2) safes; (3) "Construction Equipment"; and (4) "all other evidence pertaining to the **theft** investigation[.]" *Id.* at 4 (emphasis added). Although the search warrant application mentioned that law enforcement were seeking evidence related to the trafficking of controlled substances, the officers were only investigating the theft of the Translifts at this time.

[6] The search warrant was granted and executed later that day. During the search, officers did not locate the Translifts or any evidence related to the theft. The officers, however, did observe in plain view a glass smoking pipe on a desk in a room at the back of the house. The officers did not seize any evidence, but based on the discovery of the pipe, the officers applied for a second search

---

[3] Additionally, "either the truck or the trailer" was registered to a man named Robby Ping. Tr. Vol. II p. 18. Law enforcement learned through further investigation that Ping and Thomas were friends and "had some sort of connection together." *Id.* This information regarding Ping was only brought up through testimony during the suppression hearing; it was not included in the search warrant application.

warrant to search for evidence of illegal drugs. The second search warrant was granted and executed, and officers seized the pipe, methamphetamine stored in various containers, and marijuana inside the residence.

[7] The State charged Thomas with: Count I, possession of methamphetamine, a Level 5 felony; Count II, possession of paraphernalia, a Class A misdemeanor; and Count III, possession of marijuana, a Class B misdemeanor. The State later amended the charging information to allege that Thomas was an habitual offender.

[8] On March 12, 2024, Thomas filed a motion to suppress evidence and requested a *Franks* hearing.[4] Thomas argued that: (1) neither search warrant was supported by probable cause; (2) the first search warrant did not "describe with particularity the places to be searched or the items to be seized"; and (3) the good-faith exception did not apply. Appellant's App. Vol. II p. 62.

[9] The trial court held a hearing on the motion to suppress on May 28, 2024. Detective Keifer explained that he sought to search the residence for documents regarding ownership of the truck and to search the yard for evidence regarding the theft of the Translifts. Detective Keifer further testified that the inclusion of language regarding trafficking in controlled substances in the first search warrant application was inadvertent; Detective Keifer "copied and pasted" text

---

[4] *See Franks v. Delaware*, 438 U.S. 154 (1978). A *Franks* hearing is "[a] hearing at which the defendant is allowed to attack the validity of a search warrant[.]" *Keeylen v. State*, 14 N.E.3d 865, 870 n.3 (Ind. Ct. App. 2014), *trans. denied*.

from a template, and the reference to controlled substances was a "clerical error" that he "did not catch[.]" Tr. Vol. II p. 11.

[10] On June 5, 2024, the trial court issued an order finding that both search warrants were valid and denied the motion to suppress. The trial court certified the order for interlocutory appeal, which this Court accepted. This appeal ensued.

## Discussion and Decision

[11] Thomas challenges the denial of his motion to suppress. When a trial court denies a motion to suppress, "we necessarily review that decision 'deferentially, construing conflicting evidence in the light most favorable to the ruling.'" *Marshall v. State*, 117 N.E.3d 1254, 1258 (Ind. 2019) (quoting *Robinson v. State*, 5 N.E.3d 362, 365 (Ind. 2014)). We, however, consider any substantial and uncontested evidence favorable to the defendant. *Id.* We review the trial court's factual findings for clear error, and we do not reweigh evidence or judge witness credibility. *Id.* But we "consider 'afresh any legal question of the constitutionality of a search and seizure.'" *Chauncy v. State*, 204 N.E.3d 311, 315 (Ind. Ct. App. 2023) (quoting *O'Keefe v. State*, 139 N.E.3d 263, 267 (Ind. Ct. App. 2019)). We, thus, review the constitutionality of the searches here de novo. *Combs v. State*, 168 N.E.3d 985, 990 (Ind. 2021).

[12] Thomas argues that neither search warrant was valid and that the good-faith exception does not apply to either search. We conclude that the first search warrant lacked probable cause and failed to describe with sufficient particularity

the items sought to be searched. Furthermore, the good-faith exception does not apply. The first search, therefore, was invalid, and it follows that the second search was necessarily invalid as well. Because the searches were invalid, the evidence obtained therefrom must be suppressed.

## I. The first search warrant was invalid.

[13] The Fourth Amendment to the United States Constitution provides: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[14] The requirements of a search warrant in Indiana are set forth in the Search Warrant Statute, Indiana Code Section 35-33-5-2. The statute provides, in relevant part:

> (a) Except as provided in section 8 of this chapter, and subject to the requirements of section 11 of this chapter, if applicable, no warrant for search or arrest shall be issued until there is filed with the judge an affidavit:
>
> > (1) particularly describing:
> >
> > > (A) the house or place to be searched and the things to be searched for; or
> > >
> > > (B) particularly describing the person to be arrested;

> (2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:

> > (A) the things sought are concealed there; or

> > (B) the person to be arrested committed the offense; and

> (3) setting forth the facts known to the affiant through personal knowledge or based on hearsay, constituting the probable cause.

* * * * *

[15] Here, we find the first search warrant invalid because it was not supported by probable cause and because it failed to describe the items sought to be searched with sufficient particularity.

## A. Probable Cause

[16] The Fourth Amendment requires search warrants to be "based on probable cause."[5] *Bunnell v. State*, 172 N.E.3d 1231, 1234 (Ind. 2021). Probable cause is a "'fluid concept'" that exists when the search warrant application "establishes 'a fair probability that contraband or evidence of a crime will be found in a

---

[5] On appeal, Thomas argues that the first search warrant lacked probable cause under the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution. Thomas, however, does not present a separate argument regarding the Indiana Constitution. We, therefore, decide this case under established Fourth Amendment caselaw. *See Membres v. State*, 889 N.E.2d 265, 275 n.1 (Ind. 2008) (holding that appellant waived argument under the Indiana Constitution because appellant analyzed only the United States Constitution and, although mentioning the Indiana Constitution, presented no separate analysis thereunder).

particular place.'" *Heuring v. State*, 140 N.E.3d 270, 273 (Ind. 2020) (quoting *Illinois v. Gates*, 462 U.S. 213, 232, 238 (1983)).

[17] A "'basic concept'" of probable cause is that a "'logical connection must be shown between the items to be seized and the place to be searched[.]'" *Rice v. State*, 916 N.E.2d 296, 304 (Ind. Ct. App. 2009) (quoting *Stabenow v. State*, 495 N.E.2d 197, 201-02 (Ind. Ct. App. 1986)), *trans. denied*. A home cannot be searched "'merely because of the fortuity of [its] proximity to illegal conduct.'" *Figert v. State*, 686 N.E.2d 827, 833 (Ind. 1997) (citing *Mapp v. Ohio*, 367 U.S. 643, 660 (1961)).

[18] Discussing the role of probable cause in the issuance of a search warrant, our Supreme Court explained in *Bunnell*:

> The duty of the reviewing court—whether a trial court ruling on a motion to suppress or an appellate court evaluating that decision—is to determine whether the warrant-issuing judge had a "substantial basis" for concluding that probable cause existed. *Id.* at 953; *see also McGrath v. State*, 95 N.E.3d 522, 527 (Ind. 2018). A substantial basis requires the reviewing court, with significant deference to the warrant-issuing judge's determination, "to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause." [*State v.*] *Spillers*, 847 N.E.2d [949,] 953 [Ind. 2006] (citing *Houser v. State*, 678 N.E.2d 95, 99 (Ind. 1997)).

172 N.E.3d at 1235. In determining whether a substantial basis for a finding of probable cause exists, "'we consider only the evidence presented to the issuing magistrate' and not post hoc justifications for the search." *Heuring*, 140 N.E.3d

at 273 (quoting *Figert*, 686 N.E.2d at 830). "'[S]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.'" *Figert*, 686 N.E.2d at 833 (quoting *Gates*, 462 U.S. at 239).

[19] Here, officers located a black truck matching the description of the truck in the surveillance footage parked on the public street beside Thomas' residence. The truck's license plate was registered to a different vehicle, but the search warrant application did not allege that the truck or license plate were registered or connected to Thomas in any way.

[20] Although the truck may have been connected to the theft of the Translifts, we fail to see any connection between the truck and the residence sufficient to establish "a fair probability" that evidence related to the theft investigation would be found in the residence.[6] *Heuring*, 140 N.E.3d at 273. The mere fact that a vehicle, suspected of involvement in a crime, is parked on a public street near a residence does not give law enforcement the authority to invade the privacy of that residence. The Fourth Amendment does not countenance such intrusions. *See Figert*, 686 N.E.2d at 830-31 (holding that drug dealing activity from two nearby trailers did not supply probable cause to search third trailer);

---

[6] Detective Keifer testified at the suppression hearing that he sought to search the residence for documents related to ownership of the truck. This information, however, was only presented during the suppression hearing; it was not presented in the search warrant application, so we cannot consider it. *See McGrath v. State*, 95 N.E.3d 522, 528 (Ind. 2018) ("Rather than consider *post hoc* justifications for the search, we evaluate only the evidence presented to the issuing magistrate.").

*United States v. Brown*, 828 F.3d 375, 382-83 (6th Cir. 2016) (holding that drug-sniffing dogs' alert to vehicle did not alone establish probable cause to search the vehicle owner's residence).

[21] The State argues that more than the mere presence of the truck provided probable cause to search the house. The State points out that the truck was parked near the gate to the fenced yard and that the construction equipment around the property demonstrated that the owner could have the specialized knowledge needed to operate the Translifts. But any vehicle parked near a residence will usually be parked near points of entry, and we fail to see the connection between unspecified construction equipment and the operation of the Translifts, which are used to transport mobile homes. Based on the circumstances here, we conclude that the magistrate lacked a substantial basis to find that probable cause supported the first search warrant.

### B. Particularity

[22] In addition to lacking probable cause, the first search warrant failed to describe the items sought to be searched with sufficient particularity. The purpose of the particularity requirement is to assure that law enforcement officers "do not have 'unbridled discretion' to rummage through people's belongings." *Membres v. State*, 889 N.E.2d 265, 276 (Ind. 2008) (quoting *Warren v. State*, 760 N.E.2d 608, 610 (Ind. 2002)). Warrants that leave such discretion to law enforcement constitute "'[g]eneral warrants'" forbidden by the Fourth Amendment. *Warren*, 760 N.E.2d at 610 (quoting *Andresen v. Maryland*, 427 U.S. 463, 480 (1976)).

This Court had explained the particularity requirement as follows:

> Although the warrant must describe with some specificity where officers are to search and what they are to seize, there is no requirement that there be an exact description. Nonetheless, the warrant must be specific enough so that officers can, with reasonable effort, ascertain the place to be searched and the items to be seized. Ultimately, the description in a search warrant should be as particular as circumstances permit.

*Banks v. State*, 231 N.E.3d 853, 863 (Ind. Ct. App. 2024) (internal citations and quotations omitted), *trans. denied*.

Here, the first search warrant authorized law enforcement to search for:

> 1. Any and all papers, documents and other items of personal property that may aid in the identification of the individuals involved in the trafficking of controlled substances at the residence particularly described above or which may provide evidence of the connection of such individuals to the residence particularly described above. Such items would include the following types of items:
>
>> a. identification cards;
>>
>> b. Receipts, invoices and billing statements;
>>
>> c. Photographs and videotapes;
>>
>> d. Financial records;
>>
>> e. Papers relating to Court-appearances and/or probation or parole requirements;

f.  Cancelled mail;

g.  Deeds;

h.  Lease or rental agreements;

i.  Personal telephone books;

j.  Diaries;

k.  Keys;

2. Safes.  This Search Warrant specifically authorize[s] law enforcement officers to use a tool to gain entry into any safe seized, either at the time of seizure or at any later time to search for these listed items;

3. Construction Equipment[;]

4. And all other evidence pertaining to the theft investigation

Ex. Vol. III p. 4.

[25] Even if we ignore the search warrant's erroneous reference to the trafficking of controlled substances, we fail to see any connection between the theft investigation and the broad range of documents, safes, and miscellaneous construction equipment listed as items sought to be searched.  We are especially concerned regarding law enforcement's use of a template here to list certain of these items; the sought-for items listed in a search warrant should be particularized based on the facts known and reasonable inferences that can be

drawn therefrom in each individual case. We are also concerned that, although this was a simple investigation regarding the theft of two Translifts, the search warrant did not even mention the Translifts as items sought to be searched. *See Hester v. State*, 551 N.E.2d 1187, 1190 (Ind. Ct. App. 1990) (holding search warrant invalid because it "fail[ed] to describe in any detail precisely what items were taken in the robberies").

The first search warrant is clearly overbroad as it gave law enforcement the discretion to rummage through all nooks and crannies in the residence whereas the only items reported stolen were car-sized Translifts. In other words, the search warrant was far from "as particular as [the] circumstances permit[ted]." *Banks*, 231 N.E.3d at 863. Thus, we conclude that the first search warrant was invalid.

## III. The good-faith exception does not apply to the first search.

Having concluded that the magistrate lacked a substantial basis to conclude that the first search was supported by probable cause and that the warrant was not particularized, we further conclude that the good-faith exception does not save the search.

The good-faith exception is an "exception to the exclusionary rule[.]" *Heuring*, 140 N.E.3d at 276; *see also United States v. Leon*, 468 U.S. 897, 920-921 (1984)

(adopting the good-faith exception under the United States Constitution).[7] Under the good-faith exception, illegally obtained evidence "is not excluded if law enforcement acted in 'objectively reasonable reliance' on what they thought was a valid warrant." *Wright v. State*, 108 N.E.3d 307, 314 (Ind. 2018) (quoting *Mers v. State*, 482 N.E.2d 778, 782-83 (Ind. Ct. App. 1985)). The purpose of the good-faith exception is to recognize that, although the exclusionary rule seeks to deter "police misconduct" and "reckless" searches, such deterrable conduct is not present in every illegal search. *Heuring*, 140 N.E.3d at 278; *see also Spillers*, 847 N.E.2d at 957.

[29] In analyzing whether the good-faith exception applies, "our focus is not on the magistrate's decision to issue the warrant; rather, it is on law enforcement's decision to seek and execute the warrant." *Heuring*, 140 N.E.3d at 277 (citing *Leon*, 468 U.S. at 922 n.23). We do not inquire into what the warrant-executing officer "subjectively believed"; the inquiry is instead one of "'objective reasonableness.'" *Id*. (quoting *Leon*, 468 U.S. at 923 n.24). "[W]e ask whether a nameless, 'reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Id*. (citing *Leon*, 468 U.S. at 922 n.23).

---

[7] The good-faith exception also applies under the Indiana Constitution. *Hopkins v. State*, 582 N.E.2d 345, 351 (Ind. 1991) (recognizing the adoption of the good-faith exception under the Indiana Constitution). And our General Assembly has codified the good-faith exception under Indiana Code Section 35-37-4-5 ("Good-Faith Statute"). Thomas makes no separate arguments regarding the good-faith exception under the Indiana Constitution nor the Good-Faith Statute. We, thus, decide his argument based on the Fourth Amendment.

A belief in the warrant's validity is not reasonable if the warrant is "based on affidavits 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* (quoting *Leon*, 468 U.S. at 923; *Jackson v. State*, 908 N.E.2d 1140, 1143 (Ind. 2009)). This "'indicia' requires sufficient signs or indications of probable cause." *Id.* (citing *Indicia*, BLACK'S LAW DICTIONARY (10th ed. 2014)). We presume that a reasonable officer understands that, for probable cause to be established, a "logical connection" between the items sought and the place to be searched must exist. *Rice*, 916 N.E.2d at 304.

We conclude that the first search warrant application here was so lacking in indicia of probable cause that the good-faith exception does not apply. As our Supreme Court has recognized, "police officers are generally aware, or at least are charged with knowing, that probable cause is required to search a dwelling." *Figert*, 686 N.E.2d at 832. A reasonable officer would not have believed that probable cause existed to search Thomas' residence based on the facts of this case.

We find support in *Figert*, 686 N.E.2d 827, and *Heuring*, 140 N.E.3d 270. In *Figert*, undercover officers purchased illegal drugs from two of three trailers, which were situated closely together in a U shape. But the only facts articulated in the search warrant regarding the third trailer were the officers' observations that "[t]here are currently a large number of unidentified individuals living in and frequenting the three trailers." *Figert*, 686 N.E.2d at 829. The search warrant application affiant nonetheless believed that he had probable cause to

search for illegal drugs in the third trailer, the search warrant was granted, and the officers discovered evidence related to drug-related offenses.

[33] Our Supreme Court held that the search of the third trailer was unsupported by probable cause and that the good-faith exception did not apply. The Court noted the "lack of any nexus" between the observed criminal activity and the third trailer and that the assertion of probable cause was a mere "conclusory" statement based on the affiant's opinion. *Id*. at 832.

[34] In *Heuring*, law enforcement suspected the defendant of drug dealing and placed a GPS tracking device under his vehicle. After several days, the tracking device stopped transmitting location information, and an officer discovered that the device had been removed. Based on this information, the officer believed the device had been stolen and that he had probable cause to search for evidence of the theft in the defendant's home and a barn where the car occasionally was stored. The search warrants were granted, and law enforcement discovered the device along with incriminating evidence related to drug-related activity.

[35] Relying on *Figert*, our Supreme Court concluded that the search warrants were unsupported by probable cause and that the good-faith exception did not apply. The Court held that the search warrants did not "include facts showing more than a hunch that the GPS device was stolen." *Heuring*, 140 N.E.3d at 277. The Court further held that it was "reckless" for the officers to search the home and barn based on "nothing more than a hunch that a crime ha[d] been

committed" and that enforcing the exclusionary rule would deter similar reckless searches in the future. *Id*. at 278.

[36]     Here, the first search warrant application merely states that a truck matching the description of the one suspected of being involved in the theft of the Translifts was parked on a public street beside the gate to the fenced yard containing a barn. A reasonable officer would not believe that the mere proximity of the truck to the residence would establish a sufficient connection between the theft and the residence. In fact, the connection between criminal activity and the residence here is even weaker than in *Figert*, where officers participated in undercover drug buys from the two nearby trailers. Here, the truck was only suspected of being involved in the theft of the Translifts, and the public street was open to any vehicle, regardless of a connection to the residence.

[37]     We are also not persuaded that a reasonable officer would believe, simply because the truck's license plate was registered to another vehicle, that the officers had probable cause to search the residence for documents regarding ownership of the truck. The truck was parked on a public street, and nothing stated in the search warrant connected the truck to either the residence or Thomas.

[38]     Additionally, the good-faith exception will not be applied when the search warrant is "'so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot

reasonably presume it to be valid.'" *Caudle v. State*, 754 N.E.2d 33, 34 (Ind. Ct. App. 2001) (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975)), *trans. denied*. As we have explained, the first search warrant is clearly overbroad and did not even mention the Translifts as items sought to be searched.

[39] In short, the officers jumped the gun and engaged in a far more intrusive search than authorized under the circumstances. As in *Heuring*, 140 N.E.3d 278, this was the type of "reckless" search that the exclusionary rule seeks to deter, and declining to apply the good-faith exception here will assure that such reckless searches are deterred in the future. Based on the totality of errors regarding the first search warrant, we hold that the good-faith exception does not save the first search conducted in this case.

[40] Lastly, because we conclude that the first search was illegal, the evidence obtained during the second search—which was based entirely on information obtained from the first search—was necessarily inadmissible as fruit of the poisonous tree. *See Clark v. State*, 994 N.E.2d 252, 273 (Ind. 2013) (holding that, where defendant was illegally detained, evidence obtained from subsequent search of defendant's bag and vehicle was inadmissible as fruit of the poisonous tree); *United States v. Hansen*, 652 F.2d 1374, 1386-87 (10th Cir. 1981) (holding that, where evidence supporting search warrant of second motel room was based on illegal search of first motel room, evidence obtained from second search would be inadmissible). The trial court erred by denying the motion to suppress, and we, accordingly, reverse the trial court's ruling.

## Conclusion

The first search warrant is invalid because the connection between the theft investigation and the residence was too thin to establish probable cause to search the residence and because the search warrant failed to describe with particularity the items sought to be searched. Moreover, the good-faith exception does not apply to the first search. The first search, therefore, was illegal, and the second search—based entirely on the first search—was necessarily illegal as well. The trial court erred by denying the motion to suppress. Accordingly, we reverse.

Reversed.

Felix, J., and DeBoer, J., concur.

ATTORNEY FOR APPELLANT

Brian J. Johnson
Danville, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Alexandria Sons
Deputy Attorney General
Indianapolis, Indiana